

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable James X. Kilday
Director
Motor Transportation Division
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-856
Re: Meaning of term "oil field
equipment" as used in Ar-
ticle 911b, Revised Civil
Statutes, and authority of
Railroad Commission to en-
ter general order pertain-
ing to Special Commodity
Carriers.

We received your letter requesting our opinion in
response to the following questions:

"1. Does the Commission have the
authority to issue a general order with-
out notice and hearing applying to the
holders of all Special Commodity Permits,
authorizing the transportation of oil
field equipment, restricting such oper-
ations to the transportation of tools,
implements, machinery and appliances
necessary for use in the drilling and
operation of an oil well?

"If your answer to the above ques-
tion is in the negative, then will you
please advise the Commission:

"2. What commodities are included
within the term, "oil field equipment"
as used in the Motor Carrier Act and in
Special Commodity Permits issued by the
Commission?"

In connection with your request for an opinion
you have given us the benefit of your own research on the

Honorable James E. Kilday, Page 2

matter, for which please accept our thanks. We believe you have made the correct analysis of the matter.

Section 6 (d) of Article 911b, Revised Civil Statutes, as amended in 1937, reads as follows:

"The Railroad Commission is hereby given authority to issue upon application to those persons who desire to engage in the business of transporting for hire over the highways of this State, livestock, mohair, wool, milk, livestock feedstuffs, household goods, oil field equipment, and used office furniture and equipment, timber when in its natural state, farm machinery, and grain special permits upon such terms, conditions, and restrictions as the Railroad Commission may deem proper, and to make rules and regulations governing such operations keeping in mind the protection of the highways and the safety of the traveling public; provided, that if this Act or any section, subsection, sentence, clause, or phrase thereof, is held unconstitutional and invalid by reason of the inclusion of this Subsection the Legislature hereby declares that it would have passed this Act and any such Section, Subsection, sentence, clause, or phrase thereof without this Subsection."

We understand from you that the special commodity permits in question, as originally issued, only authorize the transportation of "oil field equipment," but that subsequent to the issuance of such permits, probably through inadvertence, the identification plates issued thereunder describe the authority of the trucks as being for the transportation of "oil field equipment and supplies". And, some of such carriers are contending that they have the right now to carry articles which are not peculiar to oil fields, but which may be used in oil fields, even groceries, lumber and the like.

Authority cannot be obtained for the transportation of commodities, other than those named in said Section 6 (d), without application and hearing, which we understand has not been had as to the carriers in question; and one must make application before receiving authority to trans-

port the special commodities named in Section 6 (d).  Hence, we are of the opinion that these carriers have acquired no additional rights by the insertion of the words "and supplies" in the identification plates.

To give the term "oil field equipment" the broad meaning contended for by some of these carriers would be to create common carriers without compliance on the part of the permittees with the many requirements made of that type of carrier.  "Oil field equipment" means only such tools, apparatus and machinery as is needed in the drilling and operation of oil and gas wells.  Such equipment must be peculiar to oil fields and their operation.  While not in point, the following cases are of assistance in this connection:

U.S. Rubber Co. vs. Washington Eng.
    Co., 149 Pac. 706, L.R.A.
    1915-F, p. 951

Bank vs. G.C. & S.F. Ry. Co., 66 S.W. 203

Irwin vs. Auto Finance Co., 40 S.W. -
    (2d) 871

Midland Sch. Dist. vs. Central Trust Co.,
    1 Fed. (2d) 124

From the opinion of Chief Justice McClendon in Greer vs. Railroad Commission, 117 S.W. (2d) 142, error dismissed, we quote as follows:

"Greer, holder of a 'special commodity carrier permit,' issued February 16, 1932, under Vernon's Ann. Civ. St. art. 911b, Section 6 (d), sued the Railroad Commission and its members (referred to as defendants) to set aside a general order of the Commission passed November 22, 1932, 'limiting and restricting transportation of 'Oil Field Equipment' under Special Commodity Permit'; and for ancillary relief. . .

"The order was attacked on two grounds: because, (1) it was passed without notice or hearing, which fact was conceded; and (2) it was unjust, unreasonable, and discriminatory as to Greer.
. . . .



"We have reached the conclusion that notice or hearing were not essential to the validity of the order in question. . .

"This section (12 (b)) manifestly has no relation to general orders of the Commission, effecting alike all carriers or all carriers of a class.

"It deals specifically and exclusively with infractions of the law or Commission rules and non-user by individual certificate or permit holders. The distinction between orders of this character and general orders is fundamental. The former affect only the individual carrier involved, and are predicated upon some dereliction upon his part. The latter affect all motor carriers or those of a class as well as all competing carriers of every description. The record shows that there were over 200 special commodity carriers operating under permits granted prior to November 22, 1932. There is no compelling inherent reason why notice and hearing should be required as prerequisite to the validity of general rules and regulations of administrative boards."

As already indicated, we do not believe that the special commodity carriers, authorized by their certificates, to transport only oil field equipment, have authority to carry anything except such tools, apparatus and machinery as is needed in the drilling and operation of oil and gas wells. Certainly, under the court's holding in the Greer case, supra, the Railroad Commission of Texas, by general order, can so restrict such carriers. Your first question, therefore, receives an affirmative answer.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Glenn R. Lewis*

Glenn R. Lewis
Assistant

APPROVED AUG 10, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

GRL:FG

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN